**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **SALEEM BUTLER,** | : | **CIVIL ACTION** |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **NO. 2:11-cv-2355-JD** |
| | : | |
| **JEROME WALSH, THE DISTRICT** | : | |
| **ATTORNEY OF THE COUNTY OF** | : | |
| **DELAWARE, and THE ATTORNEY** | : | |
| **GENERAL OF THE STATE OF** | : | |
| **PENNSYLVANIA** | : | |
| | : | |
| **Defendants.** | : | |

_____

**DuBOIS, J.**                                                                                           **March 1, 2012**

**M E M O R A N D U M**

**I. INTRODUCTION**

   This case arises out of petitioner Saleem Butler's May 17, 2004, conviction in the Court

of Common Pleas of Delaware County for conspiracy to commit murder. Petitioner was

sentenced on September 14, 2004, to 220 months' to 480 months' imprisonment.

   Petitioner filed a pro se Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C.

§ 2254 on April 4, 2011.[1] On October 24, 2011, United States Magistrate Judge Lynne A.

Sitarski submitted a Report and Recommendation ("R & R") to the Court, recommending that

the Court dismiss the Petition as untimely.

_____

[1] Petitioner signed the Petition on March 21, 2011, but it was not filed with the Clerk of the
Court until April 4, 2011.

Petitioner filed Objections to the R & R on November 28, 2011. For the reasons that follow, the Court sustains the Objections to the R & R and remands the Petition to Magistrate Judge Sitarski for an amended report and recommendation in accordance with this Memorandum.

## II. BACKGROUND[2]

Petitioner was convicted on May 17, 2004, of conspiracy to commit murder in the Court of Common Pleas of Delaware County. (Pet. 1.) The Pennsylvania Superior Court denied petitioner's appeal on April 6, 2006. (Id. at 2.) The Pennsylvania Supreme Court denied allocatur on September 29, 2006, and denied reconsideration of the denial of allocatur on November 21, 2006. (Id. at 3.)

Petitioner filed a pro se petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Const. Stat. § 9541 et seq, on September 25, 2007.[3] The PCRA court denied petitioner's PCRA petition by Order of December 18, 2008, and Memorandum of August 5, 2009. (R & R 6.) Petitioner appealed that decision to the Superior Court of Pennsylvania, which

---

[2] The facts of this case are set forth in detail in the R & R. Because the only issue presented to this Court is the timeliness of the Petition, this Memorandum will recount only the facts necessary to decide that question.

[3] Although petitioner's PCRA petition was filed in state court on October 1, 2007, he signed it on September 25, 2007. Under the prisoner mailbox rule, a filing by a pro se prisoner is deemed filed when delivered to prison officials for mailing. See Perry v. Diguglielmo, 169 F. App'x 134, 136 n.3 (3d Cir. 2006); Burns v. Morton, 134 F.3d 109, 112 (3d Cir. 1998). "In the absence of contrary evidence, a court will typically assume that a prisoner presented his or her petition to prison authorities for filing the same date that he or she signed it." Hodge v. Klopotoski, No. 08-455, 2009 WL 3572262, at *15 (W.D. Pa. Oct. 26, 2009). Thus, petitioner's PCRA petition is deemed filed on September 25, 2007.

denied relief on May 13, 2010. (Id.) The Supreme Court of Pennsylvania denied allocatur in

petitioner's PCRA action on October 20, 2010. (Id. at 6–7.)

Petitioner alleges that on April 2, 2010, he was transferred from the State Correctional

Institution in Dallas, Pennsylvania—at which he had been housed since April 15, 2009—to the

Lackawanna County Prison in Scranton, Pennsylvania. (Pet'r's First Traverse Rebuttal Resp.'s

Answer Habeas Corpus Action ("First Traverse") 2.) Because the Supreme Court of

Pennsylvania was not aware of this transfer, it allegedly sent notice of its October 20, 2010,

denial of allocatur to the Dallas facility, thus delaying petitioner's receipt of the denial "until on

or about November 6, or 7, 2010." (Id. at 3.)

Petitioner further alleges that upon receiving the denial of allocatur, he "began to

diligently research [the] option of filing a [h]abeas [c]orpus [p]etition." (Id.) Petitioner alleges

that the Lackawanna County Prison lacked the requisite habeas corpus or in forma pauperis

forms. (Id.) As a result, petitioner asked his father to send him the habeas corpus forms. That was

done, but Lackawanna County Prison Officials rejected the forms as "station[e]ry material." (Id.)

Petitioner's father then allegedly gave the forms to petitioner's former attorney, who successfully

forwarded them to petitioner. (Id.) Although petitioner does not specify when he received the

forms from his former attorney, the letter of transmittal is dated December 1, 2010, meaning that

petitioner must have received them some time thereafter. (Id.)

Upon receiving the forms, petitioner alleges that he filled them out and attempted to mail

them to this Court. (Id.) The package containing the Petition was allegedly rejected for improper

postage and returned to petitioner. (Id.) Petitioner claims that he then obtained money for postage

from his family and mailed the Petition to this Court. (Id.) The Petition is dated March 21, 2011,

and was filed in the office of the Clerk of the Court on April 4, 2011. (Pet. 18.) The petition

mentions equitable tolling in passing, but does not offer any argument as to why it applies. (Id. at 16.)

Respondents filed their Response to Petition for Writ of Habeas Corpus ("Response") on June 9, 2011. In it, respondents argue that the Petition was untimely, (Resp. 8–10), that certain claims in the Petition were procedurally defaulted, (id. at 10–14), and that petitioner's remaining claims fail on the merits, (id. at 17–26). Judge Sitarski issued her R & R on October 24, 2011. The R & R does not discuss procedural default or the merits of petitioner's claim. Judge Sitarski recommended that the Court deny the Petition as untimely because the Petition was four days late, (R & R 8–11), and equitable tolling did not apply, (id. at 11–15).

On October 26, 2011, two days after Judge Sitarski issued her R & R, petitioner filed his First Traverse in Rebuttal to Respondent's [sic] Answer in Habeas Corpus Action ("First Traverse"). Although the First Traverse is not dated, petitioner produced a "cash slip" from the prison showing that he purchased postage for the First Traverse as early as August 31, 2011. (Objections to Magistrate's Report and Recommendation—Nunc Pro Tunc ("Objections"), Ex. B.) Petitioner makes his first full argument for equitable tolling in the First Traverse, based on: (1) the delay in his receiving notice of the Pennsylvania Supreme Court's denial of allocatur in his PCRA action; (2) his lack of access to the habeas forms; and (3) the rejection of his Petition for lack of postage. (First Traverse 2–4.)

Because the First Traverse did not reach the office of the Clerk of the Court until after Judge Sitarski had issued her R & R, the R & R does not discuss petitioner's three equitable tolling arguments. Instead, the R &R's discussion of equitable tolling is limited to petitioner's attorney's failure to file a petition for writ of certiorari, which Judge Sitarski concluded did not warrant equitable tolling. (R & R 12–15.)

4

Petitioner filed Objections to the R & R on November 28, 2011, although he states that he submitted the document to prison officials on November 13, 2011. (Objections 1, 11.) The Objections rehash the arguments in the First Traverse and argue that the R & R was "[p]remature" because it was "made prior to the Traverse showing [e]quitable [t]olling [is] warranted." (Id. at 10.)

## III. STANDARD OF REVIEW

Where a court refers a habeas petition to a magistrate judge, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made ... [and] the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(c). Accordingly, the Court must make a de novo determination of those portions of Magistrate Judge Sitarski's R & R to which petitioner objects.

## IV. DISCUSSION

### A. Calculation of Limitations Period

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner must file his or her habeas corpus petition within one year of the date petitioner's judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[4] AEDPA's statute of limitations

---

[4] Under § 2244(d)(1), in addition to the date on which the petitioner's conviction becomes final, the start date can also run from the latest of: (1) "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"; (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of

contains a tolling exception whereby "[t]he time during which a properly filed application for

State post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of limitation under this subsection." Id. §

2244(d)(2).

      The Pennsylvania Supreme Court denied petitioner's application for reconsideration of its

denial of allocatur on November 21, 2006.[5] (Pet. 3.) Petitioner had ninety days thereafter to file a

petition for a writ of certiorari with the United States Supreme Court, meaning that petitioner's

judgment of conviction became final on February 20, 2007. See Kapral v. United States, 166

F.3d 565, 570–71 (3d Cir. 1999) ("[I]f a defendant does not file a certiorari petition, the

judgment of conviction does not become 'final' until the time for seeking certiorari review

expires.").

      Petitioner filed his PCRA petition on September 25, 2007, at which point 148 days

remained on the AEDPA statute of limitations. The Pennsylvania Supreme Court denied

allocatur as to the PCRA petition on October 20, 2010, meaning that petitioner had until March

17, 2011, to file a timely federal habeas corpus petition. Under the prisoner mailbox rule, the

Court deems the Petition filed on March 21, 2011, the date petitioner signed it. See Hodge v.

Klopotoski, No. 08-455, 2009 WL 3572262, at *15 (W.D. Pa. Oct. 26, 2009) ("In the absence of

---

due diligence." See 28 U.S.C. § 2244(d)(1)(A)–(D). Petitioner does not allege, and there is
nothing in the record before this Court to suggest, that the start date of the limitations period
should run from a date later than the date on which petitioner's conviction became final.

[5] As the R & R correctly notes, AEDPA's statute of limitations is tolled during the time a
petitioner seeks reconsideration. See Crews v. Horn, 360 F.3d 146, 150 n.1 (3d Cir. 2004) (citing
Nara v. Frank, 264 F.3d 310, 319 (3d Cir. 2001), overruled on other grounds by Carey v. Saffold,
536 U.S. 214 (2002)).

contrary evidence, a court will typically assume that a prisoner presented his or her petition to prison authorities for filing the same date that he or she signed it."); supra note 3. Thus, the Petition was filed four days after the statute of limitations had run.

**B. Consideration of the First Traverse**

Under Local Rule 72.1.IV(c), "[a]ll issues and evidence shall be presented to the [M]agistrate [J]udge[], and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the [M]agistrate [J]udge." The First Traverse did not reach the office of the Clerk of the Court until October 26, 2011, and thus, petitioner did not assert any of his equitable tolling arguments until after Judge Sitarski issued the R & R. However, the interest of justice requires the Court to consider the First Traverse because it makes new allegations and arguments as to equitable tolling; it would be unfair to ignore these allegations and arguments simply because petitioner filed the First Traverse two days after Judge Sitarski issued her R & R. Further, petitioner has produced evidence that he submitted the First Traverse to prison officials as early as August 31, 2011, showing that he intended his First Traverse to be a response to the Government's Response that Judge Sitarski would consider before issuing her R & R.

**C. Equitable Tolling**

Petitioner argues that he is entitled to equitable tolling because: (1) he received late notice of the Pennsylvania Supreme Court's denial of allocatur in his PCRA action; (2) he lacked access to habeas forms; and (3) his petition was returned for insufficient postage. The Court concludes that petitioner is entitled to equitable tolling because he lacked access to the habeas forms. Thus, the Court does not address petitioner's first or third arguments.

7

### 1. Standard for Equitable Tolling

Section 2244's one-year statute of limitations is subject to equitable tolling. However, "equitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' Moreover, to be entitled to equitable tolling, '[t]he petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (alterations in original) (citation omitted) (quoting Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998)). The Third Circuit has explained that equitable tolling "'may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.'" United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998) (quoting Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 753 (3d Cir.1983)).

### 2. Lack of Access to Habeas Forms

Petitioner claims his prison did not have the necessary habeas forms, which prevented him from researching and writing his Petition. Further, when his father attempted to send him the proper forms, prison officials rejected the forms as "station[e]ry material." Petitioner thus seeks to have the statute of limitations period tolled from "November 6, or 7, 2010"—the date he began "diligently research[ing]" the option of filing a habeas petition in this Court—until the date in early December 2010 when he received the forms from his former attorney.

Courts rarely grant equitable tolling on the basis that a prison lacks habeas forms or other legal materials. See, e.g., Rios v. Tennis, No. 05-6640, 2008 WL 2952352, at *8 (E.D. Pa. July

8

29, 2008); Bonilla v. Ricks, No. 00CIV.7925, 2001 WL 253605, at *2 (S.D.N.Y. March 14, 2001). For example, in Garrick v. Vaughn, the Third Circuit refused to grant equitable tolling when a prison lacked habeas forms. 162 F. App'x 122, 125 (3d Cir. 2005). However, although petitioner in Garrick filed only six days late, the Garrick court emphasized that he had been incarcerated for almost a decade before Congress passed AEDPA, and thus had delayed filing a petition for years. Id. Further, there was evidence that the prison in Garrick did, in fact, have the forms. Garrick v. Vaughn, No. 00-4845, 2003 WL 22331774, at *5 (E.D. Pa. Sept. 5, 2003) (Rapoport, M.J.).

     In this case, petitioner's lack of access to the habeas forms constituted an extraordinary circumstance. The prison's lack of habeas forms prevented petitioner from researching and writing his petition for approximately one month—from "November 6, or 7, 2010," to some time in early December, 2010.[6] Further, this was no ordinary prison inconvenience; prison officials actively—although not maliciously—prevented petitioner from obtaining the forms from the

---

[6] Courts sometimes refuse to equitably toll the AEDPA statute of limitations if the "identified extraordinary circumstances arose and concluded early within the limitations period." Harper v. Ercole, 648 F.3d 132, 137–38 (2d Cir. 2011); see also Hizbullahankhamon v. Walker, 255 F.3d 65, 76 (2d Cir. 2001). These courts hold that the extraordinary circumstances did not "prevent" petitioner from timely filing his or her petition because he or she still had time left to file after the extraordinary circumstances abated. See Fisher v. Johnson, 174 F.3d 710, 715–16 (5th Cir. 1999) (concluding causation was lacking where alleged extraordinary circumstance occurred more than six months before filing deadline).

     However, courts in the Third Circuit that cite these cases do so almost uniformly with respect to the "diligence" requirement for equitable tolling. See, e.g., Mendoza v. DiGuglielmo, No. 07-cv-431, 2009 WL 2232476, at *7 (E.D. Pa. July 24, 2009) (citing Hizbullahankhamon); Payne v. Grace, No. 06-577, 2007 WL 709307, at *3 (W.D. Pa. March 5, 2007) (same). As set forth below, petitioner in this case has exercised reasonable diligence. Insofar as cases such as Harper, Hizbullahankhkamon, and Fisher appear to hold that equitable tolling is never warranted unless the alleged extraordinary circumstance occurs near or at the end of the limitations period, this Court finds that such a rule should not apply to this case.

outside, thus further shortening the time he had to research and write his petition.[7] <u>Cf.</u> <u>Garrick</u>, 162 F. App'x at 124–25 ("[T]he record shows no allegation that he was misled or tricked, <u>or that anything (or anyone) actually 'stood in his way.</u>'" (emphasis added) (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005))); <u>Bonilla</u>, 2001 WL 253605, at *2 ("The one year period cannot be 'tolled' further while a potential petitioner seeks forms from the court (<u>at least absent unusual circumstances, not present here</u>)." (emphasis added)).

Further, petitioner was diligent in pursuing his rights. Petitioner tried to obtain habeas forms immediately after receiving the Pennsylvania Supreme Court's denial of allocatur in his PCRA action. <u>Cf.</u> <u>Rios</u>, 2008 WL 2952352, at *8 (holding that equitable tolling did not apply in part because petitioner waited three months after his PCRA appeal was denied before attempting to secure the habeas forms). Unlike the petitioners in <u>Garrick</u> and similar cases, petitioner did not sit on his rights for many months or years before filing his Petition. <u>Cf.</u> <u>Garrick</u>, 62 F. App'x at 125 (finding lack of diligence where petitioner waited almost a decade prior to AEDPA's passage before attempting to file a habeas petition). Rather, petitioner filed four days late after having only three months to research and write his petition. Thus, petitioner diligently pursued his federal habeas rights.

The Court concludes that the limitations period should be equitably tolled from petitioner's receipt of the Pennsylvania Supreme Court's denial of allocatur in his PCRA action, "November 6, or 7, 2010," until his receipt of habeas forms from his former attorney on a date

---

[7] Even if the lack of habeas forms at the prison was not an extraordinary circumstance on its own, clearly the prison's rejection of petitioner's father's package containing the forms was. This most likely delayed petitioner's receipt of the forms for at least four days, so even if the Court applied equitable tolling based solely on the prison's rejection of the package from petitioner's father, the petition would be timely.

no earlier than December 1, 2010. This period exceeds four days, meaning that the Petition was timely.

**V. CONCLUSION**

The Court concludes that equitable tolling applies to render the Petition timely. Because Magistrate Judge Sitarski's R & R addressed only the timeliness of the Petition, the Court remands this case to Magistrate Judge Sitarski for a supplemental report and recommendation. The supplemental report and recommendation should analyze (1) whether any of petitioner's claims are procedurally defaulted, (2) the merits of any of petitioner's claims that are not procedurally defaulted, and (3) any other issues deemed appropriate.

An appropriate Order follows.